## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## LUBBOCK DIVISION

| | |
|---|---|
| RAJIN PATEL, | |
| Plaintiff, | Civil Action No.:  5:17-cv-174 |
| v. | |
| TEXAS TECH UNIVERSITY; DUANE JONES, individually and in his official capacity as adjunct professor; WILLIAM PASEWARK, individually and in his official capacity as TTU Rawls College of Business Associate Dean of Graduate Programs and Research; ROBERT RICKETTS, individually and in his official capacity as Area Coordinator in Accounting; and BRITTANY TODD, individually and in her individual capacity as Associate Director of the Office of Student Conduct; | **COMPLAINT** <br> **(Jury Demanded)** |
| Defendants. | |

COMES NOW, Plaintiff RAJIN PATEL ("Plaintiff" or "Mr. Patel"), by and through his attorney of record, Jason J. Bach, Esq., of The Bach Law Group, PLLC, and hereby complains and alleges against the above-named Defendants, based upon knowledge, information and a reasonable belief derived therefrom, as follows:

### INTRODUCTION

Mr. Patel seeks relief to remedy violations of his substantive due process rights secured by the Fourteenth Amendment of the United States Constitution and contractual rights by Defendants TEXAS TECH UNIVERSITY ("TTU" or the "School"), DUANE JONES ("Jones"), WILLIAM PASEWARK ("Pasewark"), ROBERT RICKETTS ("Ricketts"), and BRITTANY TODD ("Todd," and with TTU, Jones, Pasewark, and Ricketts, collectively, the "Defendants") in relation

to those rights.  Mr. Patel was the target of patently defective plagiarism allegations while he was a student at TTU's Rawls College of Business.  Defendants targeted Mr. Patel for speaking out against exam inadequacies and summarily dismissed him from the School without substantive due process.  Mr. Patel's various defenses to the plagiarism allegations were wholly ignored and, in fact, were concealed from the committee who voted on his dismissal, as was the fact that other students were treated very differently.  Following his expulsion from TTU, Mr. Patel voiced his objections to the Defendants to no avail.  Accordingly, he now petitions this Court for redress in the form of injunctive relief, damages, costs and reasonable attorney's fees in relation to the violation of those rights, as well as damages for breach of contract pursuant to Texas common law.

## PARTIES

1.      Plaintiff Rajin Patel is currently a resident of the State of Texas and, at all relevant times, was a student at TTU.

2.      Defendant TTU operates the Rawls College of Business, a public educational institution located in Lubbock, Texas.  Defendant TTU receives financial assistance from the federal government.

3.      Defendant DUANE JONES is an adjunct professor at TTU.  He is being sued individually and in his official capacity as adjunct professor.

4.      Defendant WILLIAM PASEWARK is the Associate Dean of Graduate Programs and Research at the TTU Rawls College of Business.  He is being sued individually and in his official capacity as the Associate Dean.

5.      Defendant ROBERT RICKETS is Area Coordinator in Accounting.  He is being sued individually and in his official capacity as Area Coordinator.

6.      Defendant BRITTANY TODD is the Associate Director of the Office of Student Conduct.  She is being sued individually and in her official capacity as Associate Director.

7.      At all times herein, Defendants have been acting under color of law.

8.      At all times relevant hereto, and in all their actions described herein, Defendants' actions took place in the State of Texas, County of Lubbock.

9.      Defendants, and each of them, did the acts and omissions hereinafter alleged in bad faith and with knowledge that its conduct violated well established and settled law.

## VENUE & JURISDICTION

10.      This Court has jurisdiction over the claims set forth in this action pursuant to 28 U.S.C. § 1331 (question of federal law) based upon 28 U.S.C. § 1343 (civil rights), as the claims are based upon 42 U.S.C. § 1983.

11.      Supplemental jurisdiction over Mr. Patel's pendant state law claims are proper pursuant to 28 U.S.C. § 1367(a), as there exist claims arising out of the same transaction and occurrence as her federal claims.

12.      Venue in this jurisdiction is proper pursuant to 28 U.S.C. § 1391(b), as Defendants are located in this District and the events giving rise to Mr. Patel's claims occurred therein.

13.      Costs, expert witness fees, and attorney's fees are sought pursuant to 42 U.S.C. § 1988.

## GENERAL FACTUAL ALLEGATIONS

14.      Mr. Patel matriculated to TTU as an undergraduate in 2012 and was accepted to the Rawls College of Business at the School to complete his Master of Science degree in Accounting in August 2016.  He took concurrent baccalaureate and graduate classes in 2016 and was offered a prestigious internship in relation to his academics.  In his long tenure at TTU, Mr. Patel proved

to be an exceptional student who excelled in his courses.  He had never faced a prior allegation of academic misconduct, let alone been judged guilty of any wrongdoing, and was set to graduate in 2018.

15.     In enrolling in TTU and during the course of his enrollment, Mr. Patel and TTU entered into several contracts via school publications and individual agreements defining both the student's and the School's expectations and obligations for academics, discipline, and miscellaneous elements of university administered programs.  One relevant contract includes the Texas Tech University Student Handbook 2016-2017 ("Handbook"), pertinent parts not limited to:

a.     "The University provides a fair and equitable student conduct process, utilizing a thorough, **neutral**, and **impartial** investigation" and that "No student will be found in violation of University policy without **sufficient information and evidence** showing that it is more likely than not that a policy violation occurred...."  *Handbook*, p. 4 (emphasis added).

b.     "A Student Conduct Officer/Investigator is a trained University staff member whose role is to conduct a thorough, reliable, and **impartial** investigation of alleged violations" and to "**present** the information and **evidence obtained** through the investigation to the Panel."   *Id*., p. 5 (emphasis added).

c.     "[A]ll of the evidence and/or information gathered by the Student Conduct Officer/Investigator" must be included in the report.  *Id*., p. 99.

d.      "[A]ny sanctions will be **proportionate** to the severity of the

violation and to the *cumulative conduct history* of the student." *Id*., p. 4,

(emphasis added).

16.     During Mr. Patel's tenure at TTU, TTU Office of Student Conduct Director Sofia

Chapman has gone on record saying, "First time [academic dishonesty] offenders receive a

deferred suspension" and that first-time offenders are generally punished the same unless there are

extreme exceptions.  *See* "Academic dishonesty growing problem for colleges" at The Daily

Toreador by Hannah Hipp, *accessed at* http://www.dailytoreador.com/lavida/academic-

dishonesty-growing-problem-for-colleges/article_c50d2d8c-a03e-11e3-acbf-0017a43b2370.html

17.     During his time at TTU, Mr. Patel remained in compliance academically and

financially in conformance with contractual expectations and general guidelines promulgated by

TTU faculty, staff, and administrators.

18.     During the fall 2016-2017 term, Mr. Patel was enrolled in the graduate school

course BLAW 5392 Advanced Business Law ("BLAW") with adjunct professor Duane Jones.  Mr.

Patel excelled in the class for which he studied hard to earn a 97.7% test average and a 96% quiz

average going into the final exam.  He is an excellent student, and his grades in BLAW reflect his

incredibly thorough understanding of the subject.

19.     The BLAW final examination followed the structure of past exams and quizzes and

was administered electronically to the 100 enrolled students in small groups of about ten students

at a time, over the course of ten days.  Students were instructed to bring their own laptops to take

the exam and were advised in the syllabus it was a closed-book exam.  However, the test-bank

final exam was proctored differently and was proctored by Defendant Jones himself.

20.     Despite the closed-book rule in the syllabus, the first session of examinees were permitted to use their e-text, notes and the internet to complete the exam.  Later final exam sessions, including Mr. Patel's, returned to the strictly closed-book rule.

21.     After diligent study and completing the sample questions in every relevant chapter of the textbook, Mr. Patel took the exam on December 12, 2016.  He did not bring his notes or book to the exam or reference any other prohibited materials to complete the exam and instead relied on his extensive knowledge and skill in studying the textbook, notes, and materials created from his presence in class lecture.

22.     Mr. Jones served as the group's proctor and was seated four feet away from Mr. Patel the entire session where he could see Mr. Patel's computer screen.  Mr. Patel completed the exam in about an hour and twenty-seven minutes, which was average for the class.  Mr. Patel's earned a high grade on the exam consistent with his earlier BLAW quizzes and exams.  Mr. Jones noted there were no discrepancies in the exam process that day.

23.     On December 19, 2016, Mr. Jones emailed Mr. Patel claiming there was a "quandary regarding your grade" and made reference to the closed-book rule in the syllabus.  The email also sent the question, "Before I decide what is to be done is there anything that you would like to talk to me about the Final Exam you took on December 12, 2016?"

24.     Mr. Patel immediately called Mr. Jones and, after no one picked up, left Mr. Jones a voicemail asking to talk.  Mr. Jones then emailed Mr. Patel back, refused to speak to him, and accused him of "apparently highly plagiarized" test answers.

25.     Shortly thereafter, Mr. Patel drove to TTU where he, along with two of his classmates, Preston and Travis, who Defendant Jones also accused of cheating during the same exam session, met with Dr. William Pasework, TTU Rawls College of Business Associate Dean

of Graduate Programs and Research.  Mr. Patel immediately told Dr. Pasewark that he did not cheat and instead arrived at his answers through copious studying and preparation.  He and the other two students also told Mr. Pasewark about the irregularities between exam sessions, including the fact that some students in earlier sessions were allowed to use open books and e-notes and that the structure of the exam was strange and in fact mimicked the textbook review questions.

26.     At the meeting, Dr. Pasewark expressed concern about Mr. Patel's allegations against Mr. Jones and noted that he had explained to Mr. Jones "differential treatment could be a basis for grade appeals and that grade appeals are handled by my office. I let each of the students know that cheating issues were handled by your office and that if there was an issue regarding a grade appeal, they were welcome to approach me."  Dr. Pasewark also stated that "all students (with allegations) should go through the student conduct process."  The group discussed the unfairness between sessions at length, and Dr. Pasewark indicated he would consider the differential testing conditions as part of TTU's decision to press charges.

27.     During the meeting, Dr. Pasewark contacted Dr. Robert Ricketts, Area Coordinator in Accounting, who confirmed Mr. Jones had alleged cheating against the three students.  Dr. Ricketts later updated Dr. Pasewark that there "was solid evidence to suggest one of the individuals was cheating and not enough evidence to bring a case against the other two."  He did not name names.

28.     Mr. Patel later learned that the other two students were accused by a classmate of using Google to find their answers and that the students discussed Google use openly with Dr. Pasewark.  However, after confirming that earlier examinees were allowed open book and notes, the charges against the two other students were dropped when witnesses to the students' Google

use later recanted.  Mr. Patel also later learned that one student from the "open book" group, Chirea Christie, used exam reviews during her exam session.  Chirea Christie also stated that other students openly used open book, open notes, and internet during the exam, as well.  None of those students faced penalty either.

29.     On December 21, 2016, at 2:14:10 a.m., less than twenty-four hours after Mr. Patel told Dr. Pasewark about the exam session irregularities, Mr. Jones filed an academic integrity incident report against Mr. Patel alone.  Mr. Jones' chief complaint was that Mr. Patel's test answer to question 8 was "almost verbatim" to the textbook test bank answers, and Mr. Jones complained that because of the similarity, "the bigger issue is opening test bank copy (books/notes/internet) during a closed book/closed note exam."

30.     In fact, a cursory review of the textbook used for the class demonstrates the answer to question 8 can also be found *almost verbatim* in the textbook chapter, as an answer to the review question, on online study guides, before the test was even administered.  As he explained throughout this process, Mr. Patel studied the exam and textbook materials and memorized relevant law and legal analysis vigorously to prepare for the exam.  Mr. Patel's answer to question 8 was not only similar to the test bank answers but also was the *correct* answer.  Mr. Patel is still confused how remembering and writing down the correct answer is actionable.

31.     On January 2, 2017, Ms. Brittany Todd from the Office of Student Conduct sent Mr. Patel a formal letter opening an initial inquiry.  That same day, Ms. Todd also modified Mr. Jones' incident report, but it is unclear what changes she made.

32.     In line with the open investigation, Mr. Patel spoke via telephone with Ms. Todd on January 4, 2017.  Ms. Todd immediately accused Mr. Patel of cheating before he had even spoken and refused to listen to or memorialize Mr. Patel's statements.   Mr. Patel was not contacted

8

again during Ms. Todd's investigation nor offered the opportunity to present evidence in his own defense.   Mr. Patel felt railroaded.

33.     By January 10, 2017, Ms. Todd apparently gathered enough "evidence" to formalize Mr. Jones' allegations of both cheating and plagiarism against Mr. Patel, and TTU charged him with two counts of misconduct for the single incident, one for alleged plagiarism and one for use of prohibited materials.   Mr. Patel was notified that he would have to endure a hearing.

34.     Mr. Patel met Ms. Todd in person on January 19, 2017, as part of the pre-hearing process.   After Ms. Todd's treatment of Mr. Patel over the phone on January 4, 2017, Mr. Patel's mother, Mrs. Anu Patel, accompanied Mr. Patel to the meeting as a witness.   Mr. Patel calmly refuted the misconduct allegations and asked why he was facing such unfounded charges.   Ms. Todd began screaming, "You already know why you are here!", "You are a liar!", and "that this will be like you winning the lottery.  This will go to hearing and you will be expelled!"

35.     Ms. Todd did not give Mr. Patel any opportunity to provide evidence either at the meeting or afterwards, and the Patels were concerned that the investigator did not convey a neutral or impartial tone and, in fact, was already biased and inflammatory.   Mr. Patel did not know Ms. Todd was simultaneously preparing a Final Investigation Report to be used against him or that he could provide evidence to her directly, because she did not permit him any opportunity to do so in between calling him a liar and threatening expulsion.

36.     On January 24, 2017, Ms. Todd presented Mr. Patel with her "Final Investigation Report," which included "all of the documents that have been provided by the professor," notes she claimed to have taken during the January 4 and January 19 meetings, and the investigation documents that she created using her own Turnitin plagiarism detection analysis to detect plagiarism.  It included nothing from Mr. Patel except a few emails between him and Mr. Jones,

which Mr. Patel did not provide and half a dozen bullet-point clauses Ms. Todd took during her caustic meetings with Mr. Patel.  In fact, Mr. Patel was never given any opportunity to contribute to the supposed Final Investigation Report prior to its completion by Ms. Todd, and much of his exculpatory evidence was left out, even though the investigation was supposed to be thorough and impartial and the report was supposed to "present the information and evidence obtained through the investigation."

37.     The Turnitin report included in the Final Investigation Report noted that Mr. Patel's exam answers were similar, in places, to several other exams turned into the software data mine program.  In fact, rather than just input the discrepancy cited by Mr. Jones, Ms. Todd actually inputted Mr. Patel's entire exam into Turnitin.  The analysis showed that no one source provided all of the allegedly "almost verbatim" answers.  But because Ms. Todd entered all 6 of the essay answers combined to be assessed as one, instead of entering each essay response independently into the program, Turnitin reported a false positive plagiarism overall aggregate percentage number.  Even words like "the" and common course terminology were flagged, which increased the similarity percentage tremendously.

38.     Yet, TTU as an institution has been wary to interpret Turnitin results as outright proof of wrongdoing.  As the School's library instructs, "Faculty can also use Turnitin as a tool to detect possible instances of plagiarism" but cautions that "**Users of Turnitin must interpret matching text in the Originality Report.**"   https://library.ttu.edu/turnitin/turnitin_faq.php (emphasis in original).  In fact, a research team from TTU published a nationally-recognized series of academic reports on the inherent problems with Turnitin software's false positives.  The initial report came out in 2009, and the TTU researchers say the results are still relevant in 2015.

39. The emailed letter accompanying Ms. Todd's Final Investigation Report gave Mr. Patel little more than forty-eight hours to provide additional, contradictory information and choose between a panel hearing or administrative hearing. The email said Mr. Patel could "address any information contained in the report and make any additional statements or comments related to the investigation." The email further provided that if Mr. Patel chose a panel hearing, Ms. Todd would "provide a list of the Panel Members and a script" to the panelists that she would select. The letter warned that if Mr. Patel failed to respond to the email with additional statements and information and choose a hearing type by **January 26, 2017, at 5:00 p.m.**, she would "make a decision *in absentia*."

40. Once Mr. Patel saw the documents, he emailed Ms. Chapman (Director of Student Conduct) and Ms. Todd regarding missing evidence that should have been included into the so-called impartial report. He quickly provided a list addressing information contained in the report, and highlighted that the Final Investigation Report was deficient because:

   a. the Final Investigation Report failed to show the multiple substantial discrepancies in the administration of the test processes from group to group;

   b. the Final Investigation Report failed to show that Mr. Patel questioned the School's decision to drop allegations against the other two students or why he was treated differently;

   c. the Final Investigation Report failed to include statements that Mr. Jones said there were no test irregularities the day Mr. Patel tested;

d.      the Final Investigation Report failed to provide a statement from

technology services showing that there are no videos or other recordings of

Mr. Patel cheating; and

e.      the Final Investigation Report failed to provide documentation that

TTU discourages the use of Turnitin as proof of plagiarism and TTU's

wariness of Turnitin overall.

41.      Mr. Patel also requested a 30-day extension of the pre-hearing process to allow the

investigator to thoroughly investigate his counter-allegations, as well as to address the allegations

in the 104-page Final Investigation Report.  He was concerned that Panelists would see only the

Final Investigation Report ahead of the hearing, which contained no information from him.

42.      TTU denied Mr. Patel's request for more time.  Moreover, NONE of Mr. Patel's

concerns or counter-allegations were added to the supposedly neutral Final Investigation Report

given to panelists.

43.      TTU's actual investigation into Mr. Patel's allegations were meager.  Ms. Todd

contacted the BLAW students who were allowed to use their notes and books and confirmed Mr.

Patel's allegation of unequal testing practices.  She also forwarded his email list of concerns

directly to Mr. Jones and Dr. Pasework, with Mr. Patel's name attached.

44.      Dr. Pasework confirmed that Mr. Patel complained about unfair exam processes

previously in December 2016 and confirmed that originally, three students were accused of

misconduct.  Mr. Jones, faced directly with allegations of his own multiple missteps by Mr. Patel,

first tried to minimize his open-book procedural error, but upon being pressed with other

witnesses' statements, admitted he proctored exams unfairly and stated, "If there is an issue with

12

the way that I have proctored the exams, I am sure Dr. Ricketts will discuss that with me." He then scathingly wrote:

> Mr. Patel continues to attempt to throw the blame on everyone but himself. He has now even brought you into the mix. None of his accusations touch on the fact that four (4) of his essay answers were probably over 90% word for word from the answers given in the test bank. He cheated on the final exam, he knows he cheated on the final exam, we have proof that he cheated on the final exam, and he is still continuing to deny any personal responsibility.

Mr. Jones also stated, "It does not appear to me that he would have expressed any concern if he had not been discovered cheating." Mr. Patel understood Mr. Jones' disposition from this email to be both angry and frustrated, as well as vindictive. Ms. Todd further failed to provide documentation in the Final Investigation Report about this incident, which goes to Mr. Patel's accuser's credibility and should have been among the factors considered in the decision to dismiss him.

45. Because of Ms. Todd's biased treatment throughout, Mr. Patel chose the panel hearing. Mr. Patel ultimately faced the panel on February 10, 2017. At the hearing, Ms. Todd presented her "Final Investigation Report," leaving out all of the information Mr. Patel provided and other pertinent information supporting his defense, including:

> a. That there is nothing – no computer record, no classmate or proctor testimony, no video from an in-room camera – showing Mr. Patel copy-and-pasting or retyping an answer into the blackboard space while he looked at the opened answer on a computer screen or on a paper;

> b. The inflammatory email from Mr. Jones calling Mr. Patel a cheater;

c.      The notes from the investigative meetings demonstrating Ms. Todd's bias, as evidenced by her screaming at Mr. Patel in those meetings that he was a liar and would be expelled;

d.      That Mr. Jones and Ms. Todd had no eyewitnesses to Mr. Patel alleged cheating and that at least two other students' charges of cheating were dropped for that very reason;

e.      That Mr. Patel offered his computer for review, but it was refused;

f.      The textbook and study materials provided many of the answers that appeared on the exam, word for word, just like Mr. Patel had studied;

g.      That Ms. Todd input inaccurate data into the Turntin plagiarism detection system;

h.      Mr. Jones' admission that Mr. Patel's final grade was consistent with all of his other assessment grades; and

i.      That Mr. Jones previously documented "there were no issues with any student that took the exam on December 12th, 2016," when Mr. Patel took the test *sitting four feet away from him* with his computer screen visible to Mr. Jones.

46.     Rather, in line with the "script" Ms. Todd presented at the hearing, the panel heard that the "Final Investigation Report" was a thorough, neutral document prepared by an impartial investigator.  Mr. Patel's attempt to present contrary data contradicted the "script" and intent presented by Ms. Todd's report.  At best, her one-sided report from Student Services gave the appearance that Mr. Patel did not attempt to exonerate himself during the investigation and, worse, the Final Investigation Report tainted the entire hearing.

47.     When a faculty panelist stated at the hearing that he did not agree with either of the two allegations (01.b.01–Plagiarism or 01.a.03–Cheating) because they were not appropriate, Ms. Todd, whose "scripted" role was as a neutral, impartial investigator, responded that he and the rest of the panel must choose *between* the charges, refusing to appropriately advise the panel that they could find Mr. Patel innocent.

48.     Ultimately, the Student Conduct Office found Mr. Patel guilty by a preponderance of the evidence standard on February 15, 2017, after considering the biased "available documentation, evidence, reports received from a faculty member, and Mr. Patel's statement."  In fact, the Student Conduct Office noted there was no "direct evidence" at all in their report, but they found Mr. Patel guilty nonetheless.  Apparently, Ms. Todd's "script" worked as she promised.

49.     On February 22, 2017, Mr. Patel was dismissed from the TTU Rawls College of Business graduate program for his very first misconduct charge, put on deferred suspension until January 2018 in his TTU undergraduate classes and given an F in BLAW.  Pursuant to the deferred suspension, TTU further mandated that Mr. Patel must pay a penalty related to the plagiarism, must admit he plagiarized, and must enroll in an Academic Integrity BlackBoard course about plagiarism.  No one from TTU has ever explained why Mr. Patel's case was an extreme exception warranting a dismissal for a first time offense.

50.     Mr. Patel immediately appealed the decision, which was denied on March 7, 2017, finding that there were no procedural or substantive errors and that there was no "new" information to consider.

51.     Mr. Patel has been in contact with TTU via attorneys since early March 2017 attempting to resolve his wrongful treatment, to no avail.  Because he did not plagiarize, he is unwilling to admit to a defective plagiarism finding just to appease TTU, and he is further

unwilling to register for the plagiarism course or to pay any penalty for the erroneous finding.  He

is rightfully concerned that TTU will construe these actions as an admission of plagiarism, and it

will harm his academic and career pursuits; a concern he has expressed several times to TTU.  It

would also preclude this instant suit.

52.     On April 26, 2017, TTU froze Mr. Patel's student account because he refused to

pay the plagiarism penalty, effectively barring him from his baccalaureate degree progression or

even getting a copy of his transcripts.  Further, Mr. Patel lost a prestigious internship due to his

academic status, and his baccalaureate status is effectively on hold unless and until he falsely

admits wrongdoing.  Mr. Patel will be unable to register for fall 2017 classes.  If he misses

registration and is prevented from enrolling, he is unsure how long he will have to wait for the

classes to be offered again, and his résumé will show a gap.

53.     On June 1, 2017, Mr. Patel received notice that TTU would send him to collections

on July 1, 2017, unless he paid the penalty that amounts to an admission of cheating.

## FIRST CAUSE OF ACTION
### *CIVIL RIGHTS VIOLATIONS UNDER 42 U.S.C. § 1983*
### *(DENIAL OF SUBSTANTIVE DUE PROCESS)*
**Against Defendant Texas Tech University and Against Defendants Jones, Pasework,
Ricketts, and Todd in their Official Capacities**

54.     Each of the allegations set forth in paragraphs 1 through 53, inclusive, are hereby

incorporated by this reference as if realleged fully herein.

55.     That all persons residing in the United States are afforded the right to substantive

due process through the Fourteenth Amendment of the United States Constitution.

56.     That the protections of the Substantive Due Process clause of the Fourteenth

Amendment bar the government from taking arbitrary action that results in the deprivation of a

person's interest without reasonable justification.

57.     That Mr. Patel, through his contracts with TTU, had a constitutionally protected property interest in his continued enrollment in his education at TTU Rawls College of Business. Further, he invested significant amounts of money into paying for the education that he completed, strengthening his claim to the interest.

58.     That pursuant to his contracts with TTU, Mr. Patel is afforded rights under the Fourteenth Amendment's substantive due process clause that enables this Court to override a post-secondary public university's academic decision where the school's actions were such a substantial departure from accepted academic norms as to demonstrate that they did not actually exercise professional judgment when stripping him of that protected property interest.

59.     That when viewed against the background of Mr. Patel's entire career at the School, Defendant TTU's arbitrary and capricious expulsion of Mr. Patel after the Defendant held a biased disciplinary hearing in which the panel was given a completely one-sided Final Investigation Report was an extreme departure from academic norms and had no rational academic basis.

a.      Mr. Patel and TTU had entered into several preceding agreements and arrangements during his enrollment, in which both parties performed both rationally and professionally without discord.  Defendant TTU cannot claim Mr. Patel would have acted differently here.

b.      In this case, TTU could – and should – have allowed Mr. Patel's hearing to progress organically, where TTU's academic ruling and sanctions on the basis of his academic conduct would have been supported by court deference to academic decisions.

c.      Instead, TTU expelled Mr. Patel after a cursory investigation and biased hearing that excluded any and all information that supported his

defense and during which the panelists were not informed that they had the option to find Mr. Patel innocent.

    d.     TTU's acceptance and actions to expel Mr. Patel in conjunction with the Defendants' biased actions were unreasonable, and not rationally related to any legitimate educational interest. School policies and contracts permitted substantial recourse for TTU to sanction Mr. Patel fairly, openly, and with appropriate safeguards that were proportionate to the severity of the allegations and to his cumulative conduct history, which was pristine. That TTU chose to rely on deceitful means to achieve certain ends is not justified and constitutes arbitrary, capricious, and irrational professional judgment.

    60.    That Defendant TTU's subsequent treatment of Mr. Patel following his expulsion from the Rawls College of Business demonstrates its decision to permanently separate Mr. Patel was not related to a rational educational purpose of removing an academically deficient or unethical student. TTU continued to offer Mr. Patel participation in TTU undergraduate classes with a sanction fee despite Mr. Patel's *alleged* lack of academic integrity; TTU did not restrict Mr. Patel's completion of undergraduate coursework.

    61.    That Defendant TTU's treatment of Mr. Patel's baccalaureate status is also arbitrary, capricious, wrongful and designed to guarantee maximum harm upon Mr. Patel's curriculum vitae. His account is frozen and he is unable to register for classes, perform at internships, or obtain transcripts, not because he is academically deficient or unethical, but simply because he refuses to admit to false plagiarism charges. By de facto forcing Mr. Patel to admit to plagiarism in order to take classes, TTU is attempting to manipulate Mr. Patel to assure he cannot

maintain legal action and will be unable to enroll in a Master's program elsewhere, due to a forced, admitted plagiarism mark on his transcript.

62.     As a result of Defendants' official policies, acts, omissions, and practices, Mr. Patel was improperly dismissed from the Master's program and given an unfair undergraduate status on the sole basis of a biased investigation and hearing that denied Mr. Patel due process.

63.     As a result of Defendants' official policies, acts, omissions, and practices, Mr. Patel has suffered irreparable harm because he was deprived of his contractual rights to be free from arbitrary, capricious abuse perpetrated by state actors acting on behalf of the state.

64.     As a proximate result of the illegal, arbitrary and capricious acts of Defendants, Mr. Patel has suffered and continues to suffer damages academically, financially, and emotionally.

65.     Defendants' actions and omissions proximately caused Mr. Patel to suffer, and he continues to suffer damages, including humiliation, severe emotional distress, loss of professional reputation, and permanent professional damage.

66.     The acts, conduct, and behavior of Defendants have denied Mr. Patel his substantive due process rights, by reason of which Mr. Patel is entitled to injunctive relief of immediate re-enrollment as a student of the TTU Rawls College of Business Masters program, change of status to good standing in the baccalaureate program, and the termination of any collection actions to correct further suffering.

67.     It has been necessary for the Mr. Patel to obtain the services of an attorney to prosecute this action, and he is entitled to an award of attorney's fees and costs of suit incurred herein.

## SECOND CAUSE OF ACTION
### CIVIL RIGHTS VIOLATIONS UNDER 42 U.S.C. § 1983
### (DENIAL OF SUBSTANTIVE DUE PROCESS)
**Against Defendants Jones, Pasewark, Ricketts, and Todd in their Individual Capacities**

68.     Each of the allegations set forth in paragraphs 1 through 67, inclusive, are hereby incorporated by this reference as if realleged fully herein.

69.     That Defendants Jones, Pasewark, Ricketts, and Todd in their individual capacities, intentionally violated Mr. Patel's constitutional rights under the Substantive Due Process clause of the Fourteenth Amendment.  Defendants knew that their actions in the conduct of perpetuating a biased investigation and unfair hearing to expel Mr. Patel denied Mr. Patel of his constitutional right to substantive due process and, therefore, exceeded the authority granted to them in their official capacities as representatives of TTU and thus are individually and personally liable for any damages incurred by Mr. Patel.

a.     That Defendant Jones knowingly, arbitrarily, and capriciously accused Mr. Patel of cheating and plagiarism without any actual evidence of either solely in order to expel Mr. Patel because Mr. Patel spoke out about BLAW testing inadequacies.

b.     That Defendant Todd ratified Jones' acts by omitting pertinent details to Mr. Patel's defense in her Final Investigation and Report in an attempt to improperly dismiss Mr. Patel without any rational basis, and that Defendant Todd committed additional violations related to the investigation and hearing that were arbitrary and capricious.

c.     That other defendants knew and were in a position to stop Jones' and Todd's actions, but did nothing and in fact contributed to the problem by allowing other students to get away with worse actions without impunity.

70.    That Defendants acted under color of law in violating the Fourteenth Amendment, as described herein in violation of 42 U.S.C. § 1983.

71.    That, as a result of Defendants' acts, omissions, and practices, Mr. Patel was improperly dismissed despite the absence of any evidence of him cheating or plagiarizing. Individual Defendants Jones, Pasewark, Ricketts, and Todd, under the color of law, violated Mr. Patel's right to substantive due process by exercising their power without reasonable justification.

72.    As a result of the individual acts, omissions, and practices of Defendants Jones, Pasewark, Ricketts, and Todd, Mr. Patel has suffered irreparable harm because he was deprived of his contractual rights to be free from arbitrary, capricious abuse perpetrated by state actors acting on behalf of the state.

73.    As a proximate result of the illegal, arbitrary and capricious acts of Defendants Jones, Pasewark, Ricketts, and Todd, Mr. Patel has suffered and continues to suffer damages academically, financially, and emotionally.

74.    The actions and omissions of Defendants Jones, Pasewark, Ricketts, and Todd proximately caused Mr. Patel to suffer, and he continues to suffer, damages, including, humiliation, severe emotional distress, loss of professional reputation, and permanent professional damage.

75.    The acts, conduct and behavior of each of the individual Defendants Jones, Pasewark, Ricketts, and Todd in acting to deny Mr. Patel his substantive due process rights were performed knowingly, intentionally, oppressively, and maliciously, by reason of which Mr. Patel is entitled to compensatory and punitive damages against Defendants in their individual capacities in a sum in excess of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00).

76.     It has been necessary for Mr. Patel to obtain the services of an attorney to prosecute this action, and he is entitled to an award of attorney's fees and costs of suit incurred herein.

**THIRD CAUSE OF ACTION**
*CIVIL RIGHTS VIOLATIONS UNDER 42 U.S.C. § 1983*
*(EQUAL PROTECTION)*
**Against All Defendants in their Individual and Official Capacities**

77.     Each of the allegations set forth in paragraphs 1 through 76, inclusive, are hereby incorporated by this reference as if realleged fully herein.

78.     All persons residing in the United States are protected by the Equal Protection Clause of the Fourteenth Amendment, which bars the government from intentional discrimination including "class of one" discrimination, when the intentional discriminatory treatment lacks any rational basis and there was improper motive.

79.     That Mr. Patel, by facing a plagiarism charge at TTU, was singled out and discriminated against compared to similarly situated individuals.  Defendants chose not to formalize charges of misuse of materials against two other students in the BLAW final exam despite actually having an eyewitness report their cheating but who later recanted.

80.     That by choosing to prosecute Mr. Patel for alleged plagiarism, Defendant TTU treated Mr. Patel differently than those similarly situated students subject to the same school rules.

81.     That Defendants Jones, Pasework, Ricketts, and Todd, in their individual capacities, intentionally violated Mr. Patel's constitutional rights under the Fourteenth Amendment.  Defendants Jones, Pasework, Ricketts, and Todd individually knew that their actions in choosing to charge Mr. Patel with plagiarism denied Mr. Patel of his constitutional right to equal protection and exceeded the authority granted to them in their official capacities as representatives of TTU, and thus, are individually and personally liable for any damages incurred by Mr. Patel.

82.     That the actions of Defendants Jones, Pasewark, Ricketts, and Todd were the result of personal animus against Mr. Patel, and their said actions in violation of and denials of Mr. Patel's rights were taken without any rational basis.

83.     That Mr. Patel's cumulative history of success in TTU courses and lack of prior academic misconduct allegations were completely ignored in choosing to disproportionately prosecute this individual allegation of misconduct is clear.

84.     That by reason of the aforesaid actions, Defendants' official and individual actions exhibit deliberate indifference and/or reckless disregard for the constitutional rights of Mr. Patel and other similarly situated students, all in violation of his constitutional rights.

85.     As a result of the official actions taken by Defendants TTU, Jones, Pasewark, Ricketts, and Todd, Mr. Patel suffered and continues to suffer damages, including the deprivation of his rights, privileges, and immunities secured to him by the Fourteenth Amendment, and, thus, he is entitled to injunctive relief from Defendant TTU.

86.     As a result of the individual actions taken by Defendants Jones, Pasewark, Ricketts, and Todd, Mr. Patel suffered and continues to suffer damages, including the deprivation of his rights, privileges, and immunities secured to him by the Fourteenth Amendment, and, thus, he is entitled to an award of compensatory damages from them in their individual capacities in a sum in excess of SEVENTY-FIVE THOUSAND DOLLARS.

87.     The acts, conduct and behavior of each of the individual Defendants Jones, Pasewark, Ricketts, and Todd were performed knowingly, intentionally, oppressively, and maliciously, by reason of which Mr. Patel is entitled to punitive damages against Defendants Jones, Pasewark, Ricketts, and Todd in their individual capacities in a sum in excess of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00).

88.     It has been necessary for Mr. Patel to obtain the services of an attorney to prosecute this action, and he is entitled to an award of attorney's fees and costs of suit incurred herein.

## FOURTH CAUSE OF ACTION
### *BREACH OF CONTRACT*
### Against Defendant Texas Tech University

89.     Each of the allegations set forth in paragraphs 1 through 88, inclusive, are hereby incorporated by this reference as if realleged fully herein.

90.     That courts in Texas and the Fifth Circuit impose a contract on the relationship between students and universities.  Materials actually provided to students, including enrollment agreements and catalogs, may become part of the agreement.

91.     That Mr. Patel had express and implied contracts with Defendant TTU in connection with rights explicitly guaranteed by the various School materials, including the Handbook.

92.     That Mr. Patel timely paid all tuition and fees legitimately due and dutifully complied with the mandates of the contractual materials governing his relationship with Defendant TTU.

93.     That, in contrast, Defendant TTU's treatment of Mr. Patel's purported plagiarism violation was extreme and out of scope with the contractual promises between them.  Specifically, Defendant TTU breached its promises in the Handbook to provide "a fair and equitable student conduct process, utilizing a thorough, **neutral**, and **impartial** investigation" and that "[n]o student will be found in violation of University policy without **sufficient information and evidence** showing that it is more likely than not that a policy violation occurred...."  *Handbook*, p. 4 (emphasis added).  TTU breached these promises by conducting a biased investigation and

24

one-sided hearing that omitted all information supporting Mr. Patel's various defenses and summarily dismissed Mr. Patel without any evidence proving that he did in fact plagiarize.

94.     That Defendant TTU violated its contractual obligation that the Student Conduct Officer/Investigator be a "trained University staff member whose role is to conduct a thorough, reliable, and **impartial** investigation of alleged violations" and "**present** the information and **evidence obtained** through the investigation to the Panel." *Id.*, p. 5 (emphasis added).  Moreover, "all of the evidence and/or information gathered by the Student Conduct Officer/Investigator" must be included in the report. *Id.*, at p. 99.  Defendant TTU violated this obligation because the investigation into Mr. Patel's misconduct claim was completely biased in favor of Defendant Jones the entire time, and all evidence that supported Mr. Patel's defenses and an instruction that the panelists could find Mr. Patel innocent was withheld from the panel.

95.     That Defendant TTU also violated its promise that "any sanctions will be **proportionate** to the severity of the violation and to the cumulative conduct history of the student." *Handbook*, at p. 4 (emphasis added).  TTU violated this obligation by expelling Mr. Patel from the Rawls College of Business even though it was his very first allegation of academic misconduct.

96.     That, as a proximate result of the illegal, arbitrary and capricious breaches by Defendant TTU, Mr. Patel has suffered and continues to suffer damages academically, financially, and emotionally.

97.     Defendant TTU's actions and omissions proximately caused Mr. Patel to suffer, and he continues to suffer damages, including, humiliation, severe emotional distress, loss of professional reputation, and permanent professional damage.

98.     But for Defendant TTU's illegal breaches, Mr. Patel would remain in good standing at TTU Rawls College of Business.  Accordingly, Mr. Patel demands injunctive relief to reinstate his status as an active student.

99.     It has been necessary for Mr. Patel to obtain the services of an attorney to prosecute this action, and he is entitled to an award of attorney's fees and costs of suit incurred herein.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Mr. Patel demands a jury trial for all issues in this matter.

## RELIEF REQUESTED

WHEREFORE, Mr. Patel prays that this Honorable Court enter judgment in his favor, and against the Defendants:  (a) for Injunctive Relief to reinstate Mr. Patel as a student in good standing at Texas Tech University Rawls College of Business; (b) for compensatory damages from the individual Defendants in an amount in excess of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00) to be determined at trial; (c) for punitive damages against the individual Defendants in excess of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00) to be determined at trial; (d) for interest; (e) together with the costs and disbursements of this action and such other attorneys' fees, pursuant to 42 U.S.C. § 1988; and (d) further relief as justice requires.

DATED this 25th day of July, 2017.

**THE BACH LAW GROUP, LLC**

By     */s/ Jason J. Bach*
    JASON J. BACH, ESQ.
    Texas Bar No. 24071556
    2802 Flintrock Trace, Suite 255
    Austin, Texas 78738
    Telephone:  (512) 879-3901
    Facsimile:  (702) 925-8788
    *Attorney for Plaintiff*