IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| RAJIN PATEL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| TEXAS TECH UNIVERSITY, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | Civil Action No. 5:17-CV-174-C |

## ORDER

On this day, the Court considered:

(1) Defendants' Motion for Summary Judgment, filed September 14, 2018;

(2) Plaintiff's Response in Opposition to Defendants' Motion for Summary Judgment and Motion to Strike Expert Report of Alan M. Perlman, filed October 5, 2018; and

(3) Defendants' Reply to Plaintiff's Response in Opposition and Motion to Strike Expert Report of Alan M. Perlman, and Motion to Strike Expert Report of Robert B. Coyle, filed October 9, 2018.[1]

The Court, having considered the foregoing, is of the opinion Defendants' Motion for

Summary Judgment should be **GRANTED**.

## I.
## BACKGROUND

Rajin Patel ("Plaintiff" or "Patel") is a business student at Texas Tech University.  During

the fall semester of the 2016-17 academic year, he was enrolled in a graduate school course

---

[1] Pursuant to Judge Sam R. Cummings' Specific Requirements, Rule II B "[t]he Court will entertain only motions and responses but no replies unless otherwise ordered."  While Defendants failed to seek leave to file a reply, the Court fully considered all briefing pertaining to this instant matter.

taught by Defendant Duane Jones. After Jones accused Patel of academic dishonesty on a final exam, Texas Tech conducted an internal inquiry that resulted in an adverse Final Investigation Report. After a panel hearing, the Student Conduct Office found Patel guilty of academic dishonesty, dismissed him from the College of Business graduate program, put him on deferred suspension until January of 2018 in his undergraduate classes, and gave him a grade of "F" in his graduate school course. The deferred suspension further requires Patel to pay a penalty for plagiarism, admit that he plagiarized his exam answers, and enroll in an academic integrity course about plagiarism. Patel's internal appeal was denied by Texas Tech. On April 26, 2017, Texas Tech froze Patel's account after he refused to pay the plagiarism penalty, effectively barring him from completing his undergraduate degree and costing him a prestigious summer internship.

Patel brought this civil action against Texas Tech University and Defendants Duane Jones, William Pasework, Robert Ricketts, and Brittany Todd (all officers or agents of Texas Tech) in their official and individual capacities.[2] Patel asserted causes of action arising under 42 U.S.C. § 1983 for substantive due process and equal protection violations, as well as a cause of action against Texas Tech ("TTU") for breach of contract.[3] Now pending before the Court is Defendants' Motion for Summary Judgment, Motion to Strike the Expert Report of Alan M. Perlman, and Motion to Strike the Expert Report of Robert B. Coyle.

---

[2] On August 6, 2018, the Court entered an Order dismissing all claims asserted against Defendants, William Pasework and Robert Ricketts, in their individual capacities.

[3] On June 14, 2018, Plaintiff voluntarily dismissed his breach of contract claim pursuant to Fed. R. Civ. P. 41(a)(1)(A)(I).

## II.
## STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Tagore v. United States*, 735 F.3d 324, 328 (5th Cir. 2013).  A material fact is one that might affect the outcome of the case under the governing law; a dispute concerning a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party.  *Tagore*, 735 F.3d at 328 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)) (quotations omitted).  To determine whether a genuine dispute exists such that the case must be submitted to a jury, courts must consider all of the evidence in the light most favorable to the non-moving party, draw all reasonable inferences in favor of the non-moving party, refuse to make credibility determinations or weigh the relative strength of the evidence, and disregard all evidence favorable to the movant that the jury would not be required to believe. *Haverda v. Hays County*, 723 F.3d 586, 591 (5th Cir. 2013).

If the burden at trial would be on the non-moving party, the movant must merely demonstrate "that there is an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Bayle v. Allstate Ins. Co.*, 615 F.3d 350, 355 (5th Cir. 2010).  The burden then shifts to the non-moving party to produce evidence showing the existence of a genuine issue of material fact for trial.  *Bayle*, 615 F.3d at 355; Fed. R. Civ. P. 56(e).  To meet this burden, the non-movant must go beyond the pleadings and present specific facts indicating a genuine issue for trial.  *Bayle*, 615 F.3d at 355.  "[C]onclusory statements, speculation, and unsubstantiated assertions" are not specific facts and are not sufficient to defeat a motion for summary judgment.  *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010).

# III.
# DISCUSSION

## A. *Preliminary Matters*

### *I. Expert Report of Alan M. Perlman*

Defendants move to strike the expert reports of both Alan M. Perlman and Robert B. Coyle.  Without delving into whether or not Plaintiff's experts' reports should be stricken from the record, an inspection of both Perlman's report and Coyle's report reveals both experts failed to verify their reports under the penalty of perjury.  This Court has previously noted that "[u]nsworn expert reports do not qualify as affidavits or otherwise admissible evidence for the purpose of Rule 56, and may be disregarded by the court when ruling on a motion for summary judgment." *Queen Trucking, Inc. v. Gen. Motors Corp.*, 2007 WL 4458919, at *1 (N.D. Tex. June 8, 2007) (Cummings, J.) (quoting *Provident Life and Accident Ins. Co. v. Goel*, 274 F.3d 984, 1000 (5th Cir. 2001); *see also cf. NISSHO-Iwai Am. Corp. v. Kline*, 845 F.2d 1300, 1306 (5th Cir. 1988) ("[i]t is a well settled rule in this circuit that an unsworn affidavit is incompetent to raise a fact issue precluding summary judgment.").

To the extent Defendants move to strike Alan M. Perlman's report, the Court hereby **DENIES** that request.  To the extent Defendants move to strike Robert B. Coyle's report, the Court hereby **DENIES** that request.  However, the Court notes it will not consider these reports when ruling upon Defendants' Motion for Summary Judgment.  Specifically, the Court will refrain from considering pages 1 through 13 in Plaintiff's Appendix (Coyle's report) and pages 20 through 44 of Defendants' Appendix (Perlman's report).

## B. *Plaintiff's Breach of Contract Claim*

Defendants move for summary judgment on the basis that Plaintiff's breach of contract claim was voluntarily dismissed on appeal and any attempts to reassert such a claim are

4

improper. Plaintiff's response in opposition provides: "Patel has been clear that he voluntarily withdrew his breach of contract claim while the case was pending before the Fifth Circuit and that any further mention of the claim was in error." Pl.'s Resp. to Defs.'s Mot. for Summ. J. p. 2, n. 1. Accordingly, the Court need not address any arguments relating to the previously dismissed breach of contract claim. The Court will now move to assess the validity of Plaintiff's remaining claims.

## C. *Substantive Due Process*

At the outset, it is important to emphasize that "[t]he reach of substantive due process is limited . . . and it protects against only the most serious of governmental wrongs." *Moore v. Dall. Indep. Sch. Dist.*, 557 F.Supp.2d 755, 761 (N.D. Tex. 2008) (Fitzwater, J.). This Court has noted that "[t]he law regarding substantive due process rights in the context of higher education . . . is far from settled." *Shah v. Univ. of Texas Sw. Med. Sch.*, 54 F.Supp.3d 681, 696 (N.D. Tex. 2014) (Fitzwater, J.) (citing *Burnett v. Coll. of the Mainland*, 994 F.Supp.2d 823, 828 (S.D. Tex. 2014) ("[T]he case law on whether academic decisions actually constitute a substantive due process violation is scant (the Court has found no Fifth Circuit case ever finding such a claim valid).").

Fifth Circuit precedent provides "substantive due process under the Fourteenth Amendment protects individuals against conduct that shocks the conscience." *Dung Quoc Pham v. Blaylock*, 712 F. App'x 360, 364 (5th Cir. 2017) (internal citations omitted). Thus, "substantive due process amounts to a 'constitutional protection against arbitrary dismissal[.]'" *Id.* (quoting *Regents of Univ. of Mich. v. Ewing*, 474 U.S. 214, 223 (1985)). In this context,

"only the most egregious official conduct can be said to be 'arbitrary in the constitutional sense[.]'" *Id.* (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998)).

However, of significance "[t]he Supreme Court has twice avoided deciding whether students at a public university have a substantive due process right to continued education, assuming *arguendo* that such a right exists and concluding that no substantive due process rights were violated by the conduct alleged." *Shah*, 54 F.Supp.3d at 696; *see Ewing*, 474 U.S. 214 (1985); *see also Bd. of Curators of Univ. of Missouri v. Horowitz*, 435 U.S. 78, 91-92 (1978) ("Even assuming that the courts can review under such a standard an academic decision of a public educational institution, we agree with the District Court that no showing of arbitrariness or capriciousness has been made in this case.").

Supreme Court precedent provides, in relevant part, that:

> When judges are asked to review the substance of a genuinely academic decision
> . . . they should show great respect for the faculty's professional judgment.
> Plainly, they may not override it unless it is such a substantial departure from
> accepted academic norms as to demonstrate that the person or committee
> responsible did not actually exercise professional judgment.

*Ewing*, 474 U.S. at 225.  Under this narrow purview, "[c]ourts must accept, as consistent with due process, 'an academic decision that is not beyond the pale of reasoned academic decision-making when viewed against the background of the student's entire career at the University. . . .'" *Shah*, 54 F. Supp. 3d at 696 (quoting *Wheeler v. Miller*, 168 F.3d 241, 250 (5th Cir. 1999) (alteration in original) (*quoting Ewing*, 474 U.S. at 227-28). "Thus, where a plaintiff attempts to challenge a genuinely academic decision on the basis of substantive due process, he need show that the disputed decision fell beyond the pale of reasoned academic

decision-making such that the persons or committee responsible did not exercise professional judgment." *Seals v. Mississippi*, 998 F. Supp. 2d 509, 524 (N.D. Miss. 2014).

Courts who have evaluated whether a decision is beyond the pale of reasoned academic decision-making have considered whether the school's decision was "motivated by bad faith or ill will unrelated to academic performance, or the decision was based on arbitrary and capricious factors not reasonably considered to be academic criteria." *Wilkenfield v. Powell*, 577 F. Supp. 579, 583 (W.D. Tex. 1983) (internal citations omitted). Courts have also considered whether the "decision was 'made without a rational connection between the known facts and the decision or between the found facts and the evidence.'" *Mills v. Garcia*, 650 F. App'x 873, 878 (5th Cir. 2016) (quoting *Lewis v. Univ. of Tex. Med. Branch*, 665 F.3d 625, 631 (5th Cir. 2011)).

Assuming *arguendo* that Plaintiff retains a substantive due process right to continued education, the Court will analyze each of the challenged incidents in turn.

### i. Jones' Referral of Patel's Conduct

The parties dispute whether or not the acts taken by Professor Duane Jones ("Jones") substantially depart from accepted academic norms to establish that Jones failed to exercise professional judgment in reporting Plaintiff's alleged misconduct. The evidence before the Court establishes that when a student is suspected of misconduct, the faculty member should submit a report to the Office of Student Conduct. Pl.s' App. 24. Though the parties dispute whether or not it was appropriate for Jones to email Patel about the alleged misconduct or even evaluate the sufficiency of evidence to support a charge of misconduct, the record clearly indicates that Jones, on December 21, 2016, submitted an academic integrity incident report form to the Office of Student Conduct. Defs.' App. p. 4; *see* Doc. 12.1, App. 10-11. Further, after submitting his

7

report, Jones turned over all the evidence he had previously gathered to Defendant Brittany Todd ("Todd"), former associate director with the Office of Student Conduct ("OSC"). After turning over all relevant information, the record indicates Jones was not involved in the OSC's investigation into the alleged misconduct. To the extent Plaintiff alleges Jones committed other infractions, the Court finds those arguments unpersuasive.[4]

The Court, having considered the evidence proffered, finds Jones did not depart from accepted academic norms so as to demonstrate a failure to exercise professional judgment. The Court is of the opinion the evidence establishes that Jones' decision was not based on arbitrary and capricious factors not reasonably considered to be academic criteria. Therefore, the Court finds no genuine issue of material fact as to whether Jones failed to exercise professional judgment. Accordingly, the Court hereby **GRANTS** Defendants' Motion for Summary Judgment as it relates to Plaintiff's claims asserted against Professor Duane Jones.

### ii. Todd's Investigation

Plaintiff alleges that Todd's subsequent "investigation and actions were arbitrary and capricious." Pl.'s Resp. to Defs.' Mot. for Summ. J. p. 23. Specifically, Plaintiff contends that "Todd almost immediately assumed that Patel was guilty of plagiarism and cheating, and thus did little to investigate or identify evidence that supported his explanation." *Id.* at 20. Plaintiff also argues that the school's "conduct policies indicate that investigative reports are expected to

---

[4] To the extent Plaintiff contends he was singled out and discriminated against compared to similarly situated individuals because Jones chose not to formalize charges of misuse of materials against two other BLAW students during the final exam and despite having an eyewitness report of their cheating, the evidence shows that witness later recanted. Defs.' App. 3, ¶ 7. Further, to the extent Plaintiff argues Jones allowed other BLAW final exam sessions to take the exam "open-book", the record indicates Jones corrected his initial mistake of telling a prior exam session that the exam was open book by clarifying that the exam was, in fact, closed book. Defs.' App. 3, ¶ 5.

include interview statements, things like electronic or physical evidence, and details about discrepancies in various accounts and other credibility considerations." *Id.* However, "Todd's initial investigation included none of that." *Id.*

Defendants argue that the process "Todd utilized in conducting the investigation into Plaintiff's academic misconduct charges were very consistent with the process she typically follows for every other academic misconduct case." Defs.' Mot. for Summ. J. p. 17.[5]  Further, Defendants contend that "it is uncontested Plaintiff submitted evidence that supported his defense to [Todd], which was included in the Final Investigation Report and which was received by the hearing panel members and that Plaintiff received the Final Investigation Report from Todd prior to his academic misconduct hearing." *Id.* Defendants also point to the fact that Todd gave Plaintiff the opportunity to strike any of the individuals listed as prospective hearing panel members and Plaintiff chose not to exercise his option. *Id.* at 16. Last, Defendants argue, as it relates to Plaintiff's assertion that Todd's investigative report failed to include the requirements imposed by the school's policy, that the school's policy also provides that "the investigation procedures described below . . . may vary . . . Student Conduct Officer/Investigator will compile the relevant information and evidence into an Investigation Report, which may include a timeline of the event(s). . . ." Defs.' Reply Br. p. 7.

The Court, having reviewed the evidence proffered, finds Todd's investigation and actions were not arbitrary and capricious. To the extent Plaintiff alleges Todd committed other infractions which Plaintiff considers arbitrary and capricious, the Court finds those arguments unpersuasive. Accordingly, the Court finds no genuine issue of material fact as it relates to

---

[5] *See* Doc. 46 at 110:6-17; 110:21-111:1 [Pl.'s Prelim. Inj. Hr'g.].

Todd's actions or her investigation. The Court hereby **GRANTS** Defendants' Motion for Summary Judgment as it relates to Plaintiff's claims asserted against Defendant Brittany Todd.

### iii. The Hearing Panel, Imposition of Sanctions, and Denial of Appeal

Defendants contend that "Plaintiff received all of the process he was due pursuant to TTU's policies." Defs.' Mot. for Summ. J. p. 17. Specifically, Defendants argue "[t]he investigation report . . . which was submitted to the hearing panel, included, among other things, the Academic Integrity Incident Report Form detailing the Plaintiff's transgression, a copy of Plaintiff's final BLAW exam, Plaintiff's written responses to the allegations against him, copies of online test bank materials, and comparisons between several of Plaintiff's final exam answers and test bank answers." *Id.* at 17-18. Defendants also contend that "[t]he evidence resulting from TTU's investigation into Plaintiffs cheating and plagiarism, which subsequently led to the disciplinary action taken against him, clearly show that nearly 90% of six of Plaintiff's essay answers on his closed-material final were copied word-for-word from the test bank answers." *Id.* at 18. Defendants also point out that "Plaintiff does not contest that he could access the internet, including websites such as Google, and could have gained access to online test banks during the time he was taking the BLAW final exam." *Id.*

Defendants emphasize that the investigation report "revealed Plaintiff's answer to exam question #8 was nearly identical to a CheggStudy online test bank answer, his answer to #45 was nearly identical to Coursehero online test bank answer, and his answer to #64 was also copied from Coursehero." *Id.* at 18. Defendants also emphasize that "Plaintiff left the entity name 'Bubbly' found in the test bank in his answer even though the word 'Bubbly' was nowhere in his exam question." *Id.*

Furthermore, at the panel hearing, panel member John Dawson testified "that nobody from the University told the panel members how they should find with respect to Plaintiff." *Id.* at 19.  Mr. Dawson found Plaintiff guilty on both counts—cheating and plagiarism—primarily because of one answer in which Plaintiff used the word "Bubbly when Bubbly did not appear in the essay question, which [the panel] considered to be very flagrant evidence that Plaintiff cheated and plagiarized." *Id.*  Defendants conclude, in that "Dawson testified that the panel members considered all of the evidence, looked at other questions and at the evidence Plaintiff provided, and unanimously determined by a preponderance of the evidence that Plaintiff was responsible for both cheating and plagiarism counts." *Id.*

Plaintiff contends that "[t]he panel apparently based its decision on similarities in one particular answer to the test bank." Pl.'s Resp. to Defs.' Mot. for Summ. J. p. 24.  Plaintiff argues "[n]o one asked whether Jones had used Bubbly . . . in other course materials, given his memorization of the test bank.  Nor did the panel determine what material or how Patel supposedly accessed material during the test, despite the fact that Jones indicated students wouldn't have access to the test bank." *Id.*  In sum, Plaintiff asserts that "despite the lack of relevant information and failure to consider that the test bank, created by the textbook publisher, likely contained similar questions, scenarios, and answers to the textbook chapter, quizzes, case questions, and material presented by Jones . . . the panel simply assumed if there were similarities between Patel's answers and the test bank, he must have cheated." *Id.* at 25.  Plaintiff concludes that "[t]he panel's assumption . . . was both arbitrary and unconnected to and in disregard of key and relevant evidence.  Without identifying an original source, it is illogical to

11

conclude [Plaintiff] plagiarized, and an assumption is the thinnest of bases for a cheating charge." *Id.* at 27.

The Court, having reviewed the evidence proffered, finds that the hearing panel's ultimate conclusion and finding of both cheating and plagiarism was not arbitrary and unconnected to the relevant evidence. Nor was the panel's imposition of sanctions made without the exercise of professional judgment. The record indicates that the panel members considered all of the evidence, including the evidence Plaintiff proffered, and unanimously determined, by a preponderance of the evidence, that Plaintiff was responsible for both cheating and plagiarism. Further, the Court finds Dr. Jeff Mercer carefully reviewed the panel's decision, its imposition of sanctions, and concluded the panel had a substantial basis for its decision and the sanctions it imposed. Accordingly, the Court finds Mercer's decision was not arbitrary.

This Court is bound by precedent, in that when it is asked to review the substance of a genuinely academic decision, the Court should show great respect for the faculty's professional judgment. Simply put, the Court may not override the decision unless it is such a substantial departure from accepted academic norms as to demonstrate that the person or committee responsible did not actually exercise professional judgment. Accordingly, the Court fails to find such a substantial departure from accepted academic norms as to demonstrate both the panel and Dr. Mercer failed to exercise professional judgment. The conduct complained of does not rise to the level so as to "shock the conscience" and was not "beyond the pale of reasoned academic decision-making." Accordingly, the Court finds no genuine issues of material fact remaining as to Plaintiff's substantive due process claim. Therefore, Defendants' Motion for Summary Judgment is **GRANTED** as it relates to substantive due process.

12

## D. *Equal Protection*

"Ordinarily[,] equal protection claims are premised on allegations of such class-based discrimination." *Wheeler v. Miller*, 168 F.3d 241, 251-52 (5th Cir. 1999). "Under federal law, the Equal Protection Clause essentially directs that all persons similarly situated be treated alike." *Id.* "Generally, to establish an equal protection claim the plaintiff must prove that similarly situated individuals were treated differently." *Id.* The Fifth Circuit has "recognized that the deference afforded decisions in an academic setting under substantive due process review extends as well to cases in which the plaintiff asserts he has been denied equal protection. . . ." *Id.* In this context, "[u]nless a suspect class or fundamental right is involved, [courts] generally employ the rational basis test in deciding equal protection claims." *Id.*

A review of the record and all pertinent evidence guides to the Court to conclude Plaintiff and the two other students accused of cheating were not similarly situated for purposes of equal protection. Furthermore, as Defendants point out, "Jones [did not] know Plaintiff from any other student in the class and did not know where in the examination room [Plaintiff] or any other student was sitting." Defs.' Resp. Br. p. 10. Accordingly, the Court is of the opinion Plaintiff's equal protection claim is without merit.[6] Therefore, the Court hereby orders that Defendants' Motion for Summary Judgment be **GRANTED** as it relates to Plaintiff's equal protection claim.

---

[6] Fifth Circuit precedent provides that "if the challenged government action does not appear to classify or distinguish between two or more relevant persons or groups, then the action—even if irrational—does not deny [an individual] equal protection of the laws." *Johnson v. Rodriguez*, 110 F.3d 299, 306 (5th Cir.1997). Furthermore, "[t]o state a claim under the Equal Protection Clause, a § 1983 plaintiff must allege that a state actor intentionally discriminated against the plaintiff because of membership in a protected class." *Williams v. Bramer*, 180 F.3d 699, 705 (5th Cir.1999). The Court, having reviewed all relevant evidence, finds Plaintiff fails to establish Jones intentionally discriminated against him.

## IV.
## CONCLUSION

For the reasons set forth above, the Court is of the opinion Defendants' Motion for Summary Judgment should be **GRANTED** in its entirety.  Specifically, the Motion is granted as it relates to Plaintiff's claims asserted against Texas Tech University, Professor Duane Jones and Former Associate Director with the Office of Student Conduct, Brittany Todd.  The Court shall render final judgment on even date.  The Court's trial setting of February 4, 2019, is hereby **VACATED**.

SO ORDERED this _6th_ day of December, 2018.

SAM R. CUMMINGS
SENIOR UNITED STATES DISTRICT JUDGE